MARION CRAWFORD, Appellee, v. PUBLIX FINANCE CORPORATION et al., Appellants.

No. 42163.

. NOVEMBER 21, 1933.

Guy A. Miller and Denmar Miller, for appellants.

Neïman & Leake, for appellee.

EVANS, J.—The contention of the appellants is that the plaintiff failed to prove the case alleged in her petition; that she sued upon an *express* contract and failed to prove one; that the instructions were against the evidence and likewise the verdict. It appears from the plaintiff's evidence that since 1928 she had been in the employ of one Newton. Newton was at that time engaged in promoting a chautauqua business under the name of the United Chautauquas. She continued this employment until September, 1930. She was receiving, by an express contract with Newton, a salary of $110 a month payable at the rate of $90 per month and the balance of $20 a month to be paid in a lump at the end of the fiscal year, September 1. In September, 1930, Newton informed the plaintiff that he was transferring her from the service of the United Chautauquas to the service of the Publix Finance Corporation, of which corporation he was president. From that time forward her service was rendered to the Publix Finance Corporation. There had been no suggestion

of change in her salary. The authority of Newton, as president of the corporation, is conceded. The defendant, however, denies that the plaintiff was receiving $110 per month and claims that she was receiving $90 per month only. Newton, as a witness, testified that the $20 per month which he paid her at the close of each year was a *bonus* and that he did not agree to pay her any *bonus* for her service to the Publix Finance Corporation. That is the issue of fact. The dispute was clearly one for the jury. It is urged, however, that she pleaded an express contract and that she rests upon an implied one. It is true that there is an element of implication in the testimony. But this is because some of the evidence on behalf of plaintiff is circumstantial. These circumstances are subject to proper inferences to be drawn therefrom. The ultimate question is: Was there an agreement or understanding between the plaintiff and with Newton for a definite rate of compensation; or was that question left open to be determined by a *quantum meruit?* That there was a fixed rate agreed upon is made to appear from the testimony both of plaintiff and of Newton, as a witness for the defendant. Newton testified that the rate fixed was $90 per month. He testified also that that was her salary while she was working for him. He admits that she received an additional $20 a month at the end of the year, but he claims that this was a mere *bonus* and that he promised her no *bonus* when he transferred her to the service of the defendant company. Her rate of compensation was therefore fixed by express agreement while she worked for the United Chautauquas. She was under Newton's direction then. She continued under his direction when he transferred her to the defendant corporation. The personnel of this corporation consisted of three persons—Newton, Jacobson, and Meredith. Newton was the president and Jacobson the general manager. When Newton transferred the plaintiff to the service of the defendant corporation, he did not purport to make any other change in her contract of employment. That fact surely may be deemed a circumstance. The date of her actual transfer of service was on September 25, 1930. She testified that in the latter part of that September Mr. Jacobson, the general manager, asked her what salary she was to receive and she told him that she was drawing $90 a month and that $20 was being reserved. This conversation occurred when she drew her first salary check from the defendant company. The check was drawn to her in accord with the foregoing statement. That is to say, she received a semimonthly

check of $45. Jacobson, as a witness for the defendants, admits the conversation, but gives this version thereof: "She told me that her salary was $90.00 but that she had formerly had arrangements with Mr. Newton, president of the Publix Finance, that he had given her a bonus at the United Chautauquas and she hoped it would be the same here. I told her she would have to see Mr. Newton, and that the Publix Finance had never paid a bonus and was not in a position to pay any."

The plaintiff, as a witness, denied that she ever said anything to Mr. Jacobson about a *bonus*, and she denies this feature of the conversation as testified to by him. Jacobson testified: "I understood that her arrangement with the United Chautauquas was that she was to get $90.00 a month and that Mr. Newton had been holding $20.00 a month back and paying it to her at the end of the year."

It will be seen from the foregoing that there is abundant evidence to support a finding that a rate of payment was agreed upon. Indeed, the real dispute between the parties is, What was the rate agreed on? Was it $90 plus $20, or was it only $90? The jury could find from the evidence that as between the plaintiff and Newton he transferred her without making any change in the compensation rate. It could further find that Jacobson learned from his conversation with plaintiff when he delivered to her her first check, that she claimed the benefit of her compensation rate as fixed by Newton and that Jacobson acquiesced therein. These circumstances were admissible as tending to show a mutual agreement and understanding that the compensation was to continue as before. Such was the inference, which the jury could properly draw in the light of all the evidence. We are persuaded that the evidence is quite abundant to support a finding of an express contract, and also to support a finding that the rate agreed and understood was $90 plus $20. The conclusion which we reach at this point is determinative of the points raised by the appellant in argument.

The judgment is accordingly affirmed.

ALBERT, C. J., and KINDIG, DONEGAN, and CLAUSSEN, JJ., concur.